𝕴𝖓 𝖙𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘
𝕱𝖔𝖗 𝖙𝖍𝖊 𝕯𝖎𝖘𝖙𝖗𝖎𝖈𝖙 𝖔𝖋 𝕾𝖔𝖚𝖙𝖍 𝕮𝖆𝖗𝖔𝖑𝖎𝖓𝖆
**BEAUFORT DIVISION**

| | |
|---|---|
| **Tito Lemont Knox, #13813-171,** ) | |
| ) | Civil Action No. 9:07-1792-HMH-GCK |
| Petitioner, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| **United States of America,** ) | **OF THE MAGISTRATE JUDGE** |
| ) | |
| Respondent. ) | |
| ) | |

## I. INTRODUCTION

The petitioner, Tito Lemont Knox ("Petitioner" or "Knox"), a federal detainee proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## II. *PRO SE* REVIEW

Petitioner is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978).

P*ro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).

Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Such is the case with the present Petition.

### III.  BACKGROUND TO THE CASE

#### A.  Events According to the Incident Report

On June 13, 2005, Greenville County Sheriff's Deputy Travis Graham was called to 4 McGee Street in Greenville after receiving a report of a suspicious person discharging a firearm. Deputy Graham arrived on the scene and observed Petitioner lying on the ground near an old white house. Petitioner was crawling on the ground and was running his hand across a string, which was one of many stretched across the ground. Deputy Graham asked Petitioner what he was doing and Petitioner replied he was petting a snake. Deputy Graham did not observe a snake. Deputy Graham asked if he had a gun, and Petitioner stated he had a BB rifle in his truck and pointed toward a red truck near him. Deputy Graham asked if he had any other guns, and Petitioner said no. Deputy Graham removed the gun from the truck and secured it in his patrol car. Backup Deputy J. Garner arrived and spoke with neighbors, who were Petitioner's relatives; they told the officers that Petitioner had a mental condition and had a handgun on his person and had fired it toward the roadway prior to Deputy Graham's arrival. A Ruger .357 revolver was seized from Petitioner, who was charged as a felon in possession of a firearm and with the unlawful carrying of a pistol.[1]

#### B.  The Hearing Before the District Court

##### 1.  Deputy Graham's Testimony

---

[1]  *See* Incident Report attached to Petitioner's pleading.  [15]

On June 19, 2007, the district court conducted a Pretrial Conference and heard Petitioner's Suppression Motion prior to having a bench trial. (*Transcript of Pretrial conference, Motion and Bench trial* [35-2]) Petitioner's Suppression Motion essentially alleged that the deputies had no basis for entering on the property where he was located. Deputy Graham, the initial responder on the scene, testified for the Government, stating that he was dispatched to an area near 659 Bessie Road in reference to a person discharging a firearm into Highway 86. (*Transcript of Pretrial conference, Motion and Bench trial* [35-2] at p. 5). As Deputy Graham arrived, he saw Knox lying on the ground with strings all around him, set up with nails, looking like trip wires. Knox told Deputy Graham he was petting a snake, but no snake was seen. (*Transcript of Pretrial conference, Motion and Bench trial* [35-2] at p. 6). When Deputy Graham asked Knox if he had a gun, Knox stated he had one in the truck and pointed toward a truck. Deputy Graham recovered a BB gun as Deputy Garner arrived on site and spoke to neighbors close by. (*Transcript of Pretrial conference, Motion and Bench trial* [35-2] at pp. 7-8). Deputy Garner informed Deputy Graham that Knox was in possession of a gun. As a result of that information, the deputies told Knox to put his hands out while on the ground. Initially Knox complied, but then he moved one arm downward, at which point Deputy Garner approached and searched Knox, who was wearing a SWAT-type vest. Deputy Garner recovered a .357 caliber pistol loaded with six rounds, one having been shot, and five being live ammunition. (*Transcript of Pretrial conference, Motion and Bench trial* [35-2] at pp. 8-9). According to Deputy Graham, Knox said he was running a training camp to train young kids how to fight terrorists. Based on information received by the sheriff's deputies, Knox did not live at the residence where he was apprehended. (*Transcript of Pretrial conference, Motion and Bench trial* [35-2] at p. 9). Knox was arrested.

### 2.  Knox's Testimony

Knox testified that he was lying in the front yard of the house, on the ground between the house and the road. (*Transcript of Pretrial conference, Motion and Bench trial* [35-2] at pp. 14-15). The District Court framed the issue as whether the deputy had a right to retrieve the firearm from

Petitioner. (*Transcript of Pretrial conference, Motion and Bench trial* [35-2] at p. 15). The Court found the following undisputed facts: Knox was adjacent to the highway; the officer responded to call about someone shooting near a public roadway; the officer arrived to find Knox lying on the ground under strange circumstances; and the officer found him possessing a firearm. The Court went on to find the officers were properly on the premises; properly investigating an incident; properly used measures to secure the scene and insure their safety; and found Knox in possession of a firearm. Accordingly, the court ruled the seizure of the firearm was proper and denied Knox's Motion to Suppress. (*Transcript of Pretrial conference, Motion and Bench trial* [35-2] at pp. 15-16).

### 3.  The Bench Trial

Later that same day, based on the facts of the case and the report regarding Knox's mental examination, the District Court found him competent to proceed but ultimately not guilty only by reason of insanity. (*Transcript of Pretrial conference, Motion and Bench trial* [35-2] at pp. 18-20). On June 21, 2007, the Court ordered Knox to be committed for treatment until he was no longer a threat to himself or others. (*Judgment of Acquittal* [35-3])

Knox filed a Motion to Reconsider on July 13, 2007, which was denied by the Court on July 16, 2007. Knox was in local federal custody and according to the United States Marshall's Office, they were uncertain how to handle a Judgment of Acquittal and Commitment. The Marshall's Office contacted the Bureau of Prisons to determine how best to address and resolve the issue. Consequently, the Marshall's Office awaited designation from the Bureau of Prisons for Knox. As a result, Knox was transferred to the Bureau of Prisons on October 9, 2007, and is presently located at the Federal Medical Center in Rochester, Minnesota.

### IV.  PROCEDURAL HISTORY

The Petitioner has named the United States of America as the respondent (the "USA" or "Respondent") in his Petition. Petitioner filed this Petition on June 25, 2007 [1], alleging that on June 13, 2005, he was on his Uncle's private property when he was subjected to a search and

seizure by Officer Graham, in violation of his Fourth Amendment rights.  Petitioner alleges that it was revealed at the Suppression Hearing that the arresting officers were not lawfully on the property, which made the search illegal and Petitioner's subsequent incarceration unlawful.  ([1] at p. 3).  Knox asks this court for the following relief:  "I request ordered liberty and Case No. 6:06-269 quashed.  I deserve the fair rights and freedoms of a[n] American." (Petition [1] at p. 3).  Petitioner also filed additional attachments to the petition on August 15, 2007 and August 28, 2007, supplementing his allegations that the deputies had entered the property illegally and he was subjected to an unreasonable search.  [15; 16]

On November 16, 2007, Petitioner filed a "Motion for Transmittal of Alls [sic] Writ Pursuant to 28 [U.S.C. §] 1651" and for expungement of his arrest record [33] and a Motion for a Sixty-Day extension of time to complete his habeas proceedings.  [34]  On November 27, 2007, Respondent filed a motion for summary judgment.  [38]  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.[2]  [39]

On December 10, 2007, Petitioner filed two motions:  a motion to compel discovery and a motion for Rule 60(b) relief from judgment.  [41; 42]  On December 17, 2007, the Petitioner filed a response in opposition to the Respondent's motion for summary judgment.  [46]  Thereafter, on January 14, 2008, Petitioner filed a motion "for the Release of the Petitioner" [55], to which the Respondent response in opposition on January 24, 2008.  [56]  On February 4, 2008, the Respondent filed a motion requesting that the Court appoint a guardian ad litem ("GAL") for the Petitioner.  [58]  On February 19, 2008, Petitioner filed a motion for "Immediate release to my mother Guardian" along with an affidavit from his mother and a

---

[2]     On November 15, 2007 Respondent filed a Motion to Dismiss [29]; on November 19, 2007, Respondent filed an additional Motion to Dismiss with a supporting memorandum [32] and on November 20, 2007, Respondent filed a motion for summary judgment with a supporting memorandum.  [35]  These motions were subsequently withdrawn by the Respondent on April 30, 2008.  [77]

portion of a transcript. [61] Petitioner followed with a Motion to Appoint Counsel [65] filed on March 7, 2008. Next, Petitioner filed a Motion to "expel" information from the 911 tapes and for the Magistrate Judge to issue a Report in this matter. [67] On April 14, 2008, Petitioner filed a motion for a copy of the commitment documents in Case No. 6:06-269.[3]  [71]

## V.  DISCUSSION

### A.  Subject Matter Jurisdiction

This action is brought pursuant to 28 U.S.C. § 2241 which states in part:

(a) Writs of habeas corpus may be granted by the ... district courts ... within their ... jurisdiction. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

(c) The writ of habeas corpus shall not extend to a prisoner unless-

> (1) [The prisoner] is in custody under or by color of the authority of the United States ... or
> ...
>
> (3) [The prisoner] is in custody in violation of the Constitution or laws or treaties of the United States.

The record reflects that Petitioner was committed under 18 U.S.C. § 4243 (hospitalization of a person found not guilty only by reason of insanity). (*Transcript of Pretrial conference, Motion and Bench trial* [35-2] at pp. 20, Statement by Mr. Cauthen). Relief from unlawful custody is a proper role of the Great Writ, as Congress recognized when it provided that 18 U.S.C. § 4243– the statute under which Petitioner is committed– does not preclude a person "from establishing by writ of habeas corpus the illegality of his detention." 18 U.S.C. § 4247(g). *Archuleta v. Hedrick*, 365 F.3d 644, 647 (8th Cir. 2004). Indeed, 18 U.S.C. 4247(g) provides in pertinent part:

---

[3] On April 21, 2008 Petitioner filed a Motion for a writ of mandamus with this Court and with the Fourth Circuit Court of Appeals. [74] Respondent filed its opposition to Petitioner's motion for a writ of mandamus on April 25, 2008. [76]

> Habeas corpus unimpaired.--Nothing contained in section 4243 . . . precludes a person who is committed under either of such sections from establishing by writ of habeas corpus the illegality of his detention.

Therefore, as the Eighth Circuit has noted, a habeas corpus action to challenge custody under Section 4243 "is a cognizable claim, because 28 U.S.C. § 2241(c)(3) authorizes the habeas court to determine whether the petitioner 'is in custody in violation of the Constitution <u>or laws</u> or treaties of the United States.'" *Archuleta v. Hedrick*, 265 F.3d at 648 (emphasis supplied by the *Archuleta* court.)  That court, however, went on to explain that "habeas corpus is an extraordinary remedy typically available only when 'the petitioner has no other remedy.'" *Archuleta v. Hedrick*, 265 F.3d at 648, *citing Taniguchi v. Schultz*, 303 F.3d 950, 955 (9th Cir. 2002); *and Stack v. Boyle*, 342 U.S. 1, 6-7, 72 S.Ct. 1, 96 L.Ed. 3 (1951).

Therefore, Petitioner may contest the illegality of his civil commitment through a habeas petition filed under Section 2241, and may properly do so here, as he has no other remedy.

It should be noted that Petitioner could not file habeas petition under Section 2255 because Section 2255 only permits "[a] prisoner in custody under sentence" to argue that his sentence was imposed in violation of the Constitution.  *See* 28 U.S.C. § 2255.  "A defendant temporarily committed pursuant to section 4241(d) is neither a prisoner nor under sentence; after being found incompetent to stand trial, he is held in the custody of the attorney general as an accused rather than a criminal offender."  *United States v. Boigegrain*, 155 F.3d 1181, 1186 (10th Cir. 1998).  As mentioned above, Petitioner <u>was not</u> convicted or sentenced.  Therefore,  the holding of *Vial* has no application to the facts of this case.  *See In re Vial*, 115 F.3d at 1194 (Persons "convicted in federal court are required to bring collateral attacks challenging the validity of their judgment and sentence by filing a motion to vacate sentence pursuant to 28 U.S.C.A. § 2255.").

Based on the foregoing, the Court finds it has subject matter jurisdiction over this action.

## B.  Whether the Petitioner Has Failed to State a Claim

### Upon Which Relief Can Be Granted

On June 19, 2007, Knox had a hearing on his motion to suppress before his bench trial, and the court found the officers were properly on the premises; properly investigating an incident; properly used measures to secure to the scene and their safety; and, found Knox in possession of a firearm. The court ruled the seizure of the firearm was proper and denied the Motion to Suppress. Knox filed a Motion to Reconsider on July 13, 2007, which was denied by the court on July 16, 2007.

In its motion for summary judgment, Respondent argues that Knox "must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *See United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999). *Mikalajunas* considers a miscarriage of justice to mean actual innocence. The Respondent argues that the Petition should be dismissed as it does not meet the actual innocence test. "In order to collaterally attack a conviction or sentence based upon errors that could have been, but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *Mikalajunas*, 185 F.3d 490, 492-93. Respondent contends, and this Court agrees that Knox cannot show "actual innocence" by clear and convincing evidence. Further, Knox cannot demonstrate that a miscarriage of justice will occur if the court refuses his collateral attack upon his detention. The Indictment and arrest warrant clearly indicate that Knox was charged with violating Title 18, United States Code, § 922(g)(1). Thus, no miscarriage of justice will occur by denying Knox a forum to collaterally attack his current detention.

Furthermore, Knox does not argue actual innocence, but appears to contend that various records are based on false information provided by the arresting officers, which has resulted in violations of his rights under the Fourth, Fifth, Sixth, Eighth, Eleventh, and Fourteenth

Amendments. However, Petitioner does not specifically explain how his constitutional rights have been violated.

It appears to the Court that Petitioner's Petition for Section 2241 relief essentially is trying to establish his right to release by re-litigating the District Court's finding that he was not guilty only by reason of insanity. Petitioner is in custody by reason of commitment orders entered by the District Court. He has not stated a claim that would entitle him to habeas relief. Therefore, it is recommended that Respondent's motion for summary judgment [38] be granted.

### C. Petitioner's Motions

Although the undersigned recommends that Respondent's motion for summary judgment be granted, it nevertheless will continue with its analysis and address Petitioner's outstanding motions on their merits.

### 1. Petitioner's Motion for Transmittal of "Alls [Sic] Writ" Pursuant to 28 U.S.C. § 1651 and Expungement of Records [33]

Petitioner requests that a writ issue pursuant to 28 U.S.C. § 1651 and also seeks "the expungement" of his arrest record, the 911 response call and the video record of his arrest, and of all psychiatric and psychological records of the criminal and civil case file, and BOP records, "state and federal." [33] The Respondent filed a reply to this motion, contending that Petitioner failed to state a claim upon which relief could be granted. ([38] at p. 3)

The All Writs Act provides that a court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C.A. § 1651(a). To the extent that Petitioner's motion made pursuant to 28 U.S.C. § 1651 is construed as a civil writ of *audia querela*,[4] such writ was abolished by Fed.R.Civ. P. 60.

---

[4] *Audita querela*, which was introduced during the time of Edward III, was "available to a judgment debtor who seeks a rehearing of a matter on grounds of newly discovered evidence or newly existing legal defenses." BLACK'S LAW DICTIONARY *audita querela* (8th ed. 2004). This writ is "'distinguished from coram nobis in that coram nobis attacks the judgment itself, whereas *audita querela* may be directed against the enforcement, or further enforcement, of a judgment which when rendered was just and unimpeachable.'" (citing 7A C.J.S. Audita Querela § 2 (1980)).

Furthermore, if the court construes Petitioner's commitment as implicating criminal matters, to the extent that Petitioner's request for Section 1651 relief seeks to change the indictment and vacate Petitioner's commitment ([33] at p. 7), the writ still is not available to him. *See In re Watkins*, 223 Fed. Appx. 265, 2007 WL 1041035 (4th Cir. March 29, 2007) (per curiam). In *Watkins*, the Fourth Circuit Court of Appeals relied on *United States v. Valdez-Pacheco*, 237 F.3d 1077, 1080 (9th Cir. 2001), which case held that because a petitioner's claims were cognizable in a § 2255 petition, even if the § 2255 petition were barred by the AEDPA rules that limit a successive motion, the writ of *audita querela* was not available to him. The Ninth Circuit Court of Appeals further explained that writs of *coram nobis* and *audita querela* "survive only to the extent that they fill 'gaps" in the current systems of postconviction relief." *Id.* at 1079. As mentioned above, however, the Petitioner has not been "convicted" of anything. Furthermore, Petitioner has not alleged any facts that could prove that a "gap" exists in his case. Therefore, Petitioner is not entitled to a writ pursuant to Section 1651.

Furthermore, to the extent that Petitioner seeks a writ of *coram nobis* to vacate the indictment and the judgment of commitment so that he is released from custody ([33] at p. 1, 7), the issuance of this writ likewise is barred by Rule 60.

Petitioner's motion also seeks expungement of all records, in any form, relating to Petitioner's arrest and supporting his commitment. ([33] at p. 7)  However, Petitioner has not alleged any facts in his motion which would support a finding of the required exceptional circumstances justifying such relief.  "A person can petition the federal court (complaint for injunctive relief) to expunge all federal judicial (but not executive branch) records . . . . but it is very difficult to prove the "exceptional circumstances" that would support a judgment for expunction." *Gilchrist v. South Carolina Veterans Admin.*, 2007 WL 3286781 (D.S.C. Nov. 6, 2007), *citing Allen v. Webster*, 742 F.2d 153, 155 (4th Cir. 1984) (expungement of an arrest record is relief confined to "exceptional circumstances"). Aside from the isolated statutory bases for expungement (none of which are present in this case), courts also have inherent equitable

power to order the expungement of criminal records; *see U.S. v. Doe*, 556 F.2d 391, 393 (6th Cir. 1977); yet such power is of "exceedingly narrow scope." *Coles v. Levine*, 561 F.Supp. 146, 153 (D.Md. 1983) (*quoting Rogers v. Slaughter*, 469 F.2d 1084, 1085 (5th Cir. 1972)), *aff'd*, 725 F.2d 674 (4th Cir. 1984); *see also Geary v. U.S.*, 901 F.2d 679, 679 (8th Cir. 1990) (courts may expunge criminal records based on their inherent equitable powers "provided that the case presents extraordinary circumstances"), invocation of courts' inherent power to expunge criminal records is to be reserved only for extreme and compelling circumstances, such as when necessary to "remedy[ ] the denial of an individual's constitutional rights," *Coles*, 561 F.Supp. at 153, or when the government concedes the defendant's innocence. *U.S. v. Van Wagner*, 746 F.Supp. 619, 622 (E.D.Va. 1990). *But cf. Geary*, 901 F.2d at 680 (stating that mere "[a]cquittal [of a defendant] generally has not been treated by the courts as an extraordinary circumstance warranting the issuance of an expungement order").

This Court is aware that the power to expunge "is a narrow one, and should not be routinely used whenever a criminal prosecution ends in an acquittal, but should be reserved for the unusual or extreme case." *U.S. v. Linn*, 513 F.2d 925, 927 (10th Cir.), *cert. denied*, 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975). Such extreme circumstances have been found and records ordered to be expunged where procedures of mass arrests rendered judicial determination of probable cause impossible, *Sullivan v. Murphy*, 478 F.2d 938 (D.C.Cir. 1973); where the court determined the sole purpose of the arrests was to harass civil rights workers, *U.S. v. McLeod*, 385 F.2d 734 (5th Cir. 1967); where the police misused the police records to the detriment of the defendant, *Wheeler v. Goodman*, 306 F.Supp. 58 (W.D.N.C. 1969); or where the arrest was proper but was based on a statute later declared unconstitutional, *Kowall v. U.S.*, 53 F.R.D. 211 (W.D.Mich. 1971). Nothing like any of these extreme circumstances exist in this case. Accordingly, Petitioner is not entitled to expungement of his records.

### 2.  Petitioner's Motion to Compel Discovery and for Sanctions [41]

On December 10, 2007, Petitioner filed a motion [41] contending that prior to his June 19, 2007 bench trial, he had requested that the Government produce a certified copy of the 911 transcript from June 13, 2005 call to Greenville County Detention Center, which apparently was the initial dispatch to the responding deputy in the underlying criminal case. Petitioner claims that his request was denied with prejudice, and he seeks sanctions pursuant to Fed.R.Civ.P. 37(c) because the Respondent failed and/or neglected to disclose the requested transcript. ([41] at pp. 1-3). Specifically, Petitioner alleges:

> I requested a certified copy of the 911 transcript from the June 13, 2005 allegations from the United States Attorney in good faith of the call that was made to the Greenville County Detention Center. I provided certification of my request prior to trial and the United States Attorney response under Rule 37. I asked the Court to take action and impose sanctions Subdivision (c)(l) When this subdivision was added in 1993 to direct exclusion of materials not disclosed as required, the duty to supplement discovery responses pursuant to Rule 26(e)(2) was omitted.
> I contacted Mr. Cauthen the United States Attorney prior to trial concerning the 911 tape recording that was suppose[d] to had been made to the Greenville County Detention Center and I was denied with prejudice.

In response to Plaintiff's motion to compel and for sanctions, the Respondent argues that Petitioner was represented by counsel David Plowden, Esq., throughout his criminal proceedings. [57] Respondent contends that it provided discovery to attorney Plowden well in advance of trial but that no dispatch audio tape was included because the Government does not recall any request for such tape by attorney Plowden, and the Government never had physical possession of a copy of any such tape. ([57] at p. 2) The Respondent has reviewed the court's records in PACER and determined as of January 29, 2008 that Petitioner's pre-trial request for a certified copy of the tape is not present. Furthermore, Petitioner specifically claims he made such a request of the Government and "was denied". The Respondent has reviewed its file and PACER and cannot identify such a request from Petitioner and cannot locate any letter denying the request. Finally, Respondent contends that the government did not write a letter to Petitioner which denied Petitioner's request.

The Respondent further contends that pursuant to established procedure, the criminal case file since trial has been purged, and the only documentation located from Petitioner

addressed to the Assistant United States Attorney in the criminal case was dated May 23, 2007, and it requested a copy of the Grand Jury transcript be sent to him; he also claimed to have "a problem with discovery information" relating to a search by Officer Graham". (*See* Attachment 1 to [57])

Respondent further alleges that Petitioner's defense counsel was informed of this letter and request so he could address such issues with his client directly as evidenced by attorney Plowden's letter to Petitioner dated May 25, 2007. A copy of that letter was included by Knox with his December 10, 2007, filing.

At trial on June 19, 2007, Petitioner, through counsel, took the opportunity to examine the initial responding officer, Deputy Graham, about the dispatch information which caused him to arrive at that location. Petitioner took the opportunity to testify about his actions on that day and did not mention the purported audio dispatch tape. No issue was ever raised at trial about the purported audio tape of a 911 call/transcript.

According to Rule 37(c), of the Federal Rules of Civil Procedure, the basis for seeking to impose sanctions are based on the failure of a party to respond to an inquiry for discovery/information. In the present case however, no 911 tape was provided to the Government with the investigating agency's case file; the Government never had actual possession of such a tape copy; and no dispatch audio tape was included in the discovery provided to counsel Plowden well in advance of trial and because the Government is not aware of any request for such tape by Petitioner's counsel. The Respondent further argues that to establish the deputy's initial presence on the scene, the Government needed only Deputy Graham's testimony as provided at trial based on the incident report. [57]

In response, the Petitioner alleges that the 911 call itself was the basis for Officer Graham's appearance at the scene [62; 63], referring to the Court's statements at the end of the hearing (p. 15, ll. 14-25 and p. 16, ll 1-6). Petitioner contends that "[t]he Court used the 911 call to establish the grounds for probable cause. AND THE OFFICER RECEIVED A CALL TO

INVESTIGATE SOMEONE SHOOTING NEAR A PUBLIC ROADWAY." ([62] at p. 2.)  The Court, however, merely summarized Officer Graham's testimony.  The Court did not rely on the contents of the 911 tape to establish probable cause.

From the foregoing, it appears that the Petitioner's motion to compel and for sanctions is baseless, and it is recommended that Petitioner's motion [41] be denied.

### 3.  Petitioner's Motion for Rule 60(b) Relief [42]

On December 10, 2007, Petitioner filed a motion for Rule 60(b) relief from the June 2007 commitment order on the grounds that the District Court failed to hold the necessary hearing within forty days as required by 18 U.S.C. 4243(c).  ([42] at p. 2)  The Respondent filed a reply, which was filed "Under Seal".  [51]

The Court finds Petitioner's motion patently without merit.  As the transcript of the proceedings before Judge Herlong indicates [32-2], on June 19, 2007, Petitioner appeared before the Court for a "pretrial conference, motion and bench trial" which culminated in the Court finding Petitioner not guilty only by reason of insanity and entering a separate judgment to that effect on June 21, 2007.  [32-3]  Petitioner had his hearing on June 19, 2007.  It is recommended that his motion for Rule 60(b) relief [42] be denied.

### 4.  Petitioner's Motion to be Released  [55]

Next, Petitioner moves this Court to be released because he argues that there was an error in the commitment procedure.  [55]  In this motion, Petitioner raises the same bases for relief as raised in his Rule 60(b) motion for relief, but argues in addition that the District Court failed to specify the statute under which Petitioner was committed.  [42]  Again, Petitioner alleges that the District Court denied Petitioner a forty (40) day hearing, which should have been held in July 2007, in violation of 18 U.S.C. §§ 4243(a)–(e).  As the Petitioner contends he is wrongfully being held in custody, he requests that the Court recommend dismissal of the commitment and his release.

In support of this motion [55] Petitioner relies on a copy of an e-mail from one Stephen G. O'Connor, Case Management Coordinator at FMC Rochester, which states that while the District Court did not specify the statute under which Petitioner was committed, the proper statute is "18 U.S.C. § 4343(e)." ([55]; see email attached as exhibit.)  As the Respondent correctly notes, there is no code section designated as 18 U.S.C. § 4343, concerning hospitalization of those found not guilty only by reason of insanity.  The correct statute, and one which was addressed in the Government's December 28, 2007, filing is 18 U.S.C. § 4243.

Assuming without deciding that the e-mail is legitimate, and disregarding for a moment the incorrectly citation, it nonetheless remains that the e-mail and the resulting request make clear that the Petitioner's commitment by the District Court was pursuant to Section 4243(e), made after the requisite finding of potential danger.  The Respondent has provided the Court with the complete trial transcript which revealed the District Court followed proper procedure. [32-2]  As discussed above, the hearing that Petitioner claims was not held, was, in fact held immediately following the District Court's bench trial and return of verdict of not guilty only by reason of insanity.

According to the record, before the district court on June 19, 2007, once the District Court returned the judgment of not guilty only by reason of insanity, the Government then moved that Petitioner be committed for further treatment based upon Title 18, United States Code, Section 4243.  In support of its motion, the Government orally placed on the record for the District Court's consideration portions of Petitioner's prior criminal history to include the following:  1994 assault and battery with intent to kill; a second assault and battery; 1994 money laundering; possession of cocaine; 1994 possession with intent to distribute marijuana; and possession with intent to distribute crack cocaine.  The District Court then ordered Petitioner be committed.  ([32-2] at pp. 20-21)

It is evident from the District Court proceedings, supported by the transcript, and the e-mail from Petitioner's caseworker, that his commitment was and is pursuant to 18 U.S.C. §

4243, *et seq*, including subsection (e).  The Court cannot conclude otherwise.

Finally, with respect to Petitioner's second argument to the effect that he was denied a forty day hearing, this is the same argument as was made in his December 5, 2007, Motion for Rule 60(b), Relief from Judgment or Order [42] and has been addressed above.  Therefore, it is recommended that Petitioner's Petitioner's Motion to be Released [55] should be denied.

### 5.  Respondent's Motion to appoint Guardian ad Litem [58] and Petitioner's Motion for "Immediate release to my mother Guardian" [61]

Next, the Respondent has filed a motion for the appointment of a Guardian ad Litem for the Petitioner on the grounds that he was found not guilty by reason of insanity after trial and was ordered by the court on June 21, 2007, to be committed for treatment until he is no longer a threat to himself or others.  [58]  Petitioner has filed his opposition to the Respondent's motion.  [60]  The Court recommends that this motion be denied because there are no funds to pay for the appointment of a GAL.

Petitioner also has filed a motion to have his mother be appointed as his guardian.  [61]  The Court likewise recommends that this motion be denied.

### 6.  Petitioner's Motion to appoint counsel [65]

Petitioner requests that counsel be appointed to assist him in his quest for discovery of a purported audio tape of a 911 call/transcript of the initial dispatch to the responding deputy in the underlying criminal case.  As mentioned above, Petitioner was represented by attorney David Plowden, Esq., throughout his criminal proceedings.  Discovery was provided to Mr. Plowden well in advance of trial and no dispatch audio tape was included because the Government does not recall any request for such tape by counsel Plowden, and the Government never had physical possession of a copy of any such tape.

The court is granted the power to exercise its discretion to appoint counsel for an indigent in a civil action.  *Smith v. Blackledge*, 451 F.2d 1201 (4th Cir. 1971).  When exercising its

discretion to appoint counsel in a civil action, the appointment should be allowed only in exceptional cases.  *Whisenant v. Yuam*, 739 F.2d 160 (4th Cir. 1984).

In the present case, appointing counsel to Petitioner in order to obtain the dispatch tape would be an exercise in futility, as Respondent has repeatedly stated that it never had possession of such tape.  Therefore, this Court has determined that there are no unusual circumstances which would justify the appointment of counsel, nor would the Petitioner be denied due process if an attorney were not appointed.  It is recommended that this motion [65] be denied.

### 6.  Petitioner's Motion to "expel" information and for a Report and Recommendation [67]

Petitioner's next motion requests, first, that the Court "expel" or exclude information from the record regarding the 911 call to the sheriff's deputies.  This motion is denied.  Petitioner also moves the Court to issue a Report and Recommendation, which it has done.  Therefore, the second part of Petitioner's motion is moot.

### 7.  Petitioner's Motion for a copy of commitment documents in Case No. 6:-6-269 [71]

Petitioner received a copy of the commitment documents (Transcript of Pretrial conference, Motion and Bench trial [35-2] and Judgment of Acquittal [32-3] in the form of attachments to the Respondent's Motion to Dismiss.  [32]  Therefore, it is recommended that this motion [71] be considered moot.

### RECOMMENDATION

Based upon the foregoing, it is recommended as follows:

Petitioner's Petition for Habeas Corpus relief **[1] should be dismissed,**

Petitioner's Motion for transmittal of all writs, expungement of records and release **[33]**
> **should be denied**;

Petitioner's Motion for an extension of time **[34] is moot;**

Respondent's Motion for summary judgment **[38] should be granted;**

Petitioner's Motion to compel discovery and for sanctions **[41] should be denied;**

>Petitioner's Motion for Rule 60(b) relief from judgment or order regarding commitment under 18 U.S.C. § 4243 **[42] should be denied**;
>
>Petitioner's Motion for release **[55] should be denied;**
>
>Respondent's Motion to appoint Guardian ad Litem **[58] should be denied;**
>
>Petitioner's Motion for immediate release to his mother **[61] should be denied;**
>
>Petitioner's Motion to appoint counsel **[65] should be denied;**
>
>Petitioner's Motion to "expel" information from the 911 tapes and for the Magistrate Judge to issue a Report in this matter **[67] should be denied in part and considered moot in part;** and
>
>Petitioner's Motion for copy of commitment documents in Case No. 6:-6-269 **[71] should be moot.**

_____
GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

May 2, 2008

Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).